DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Edward Lee Brown, Jr., appeals his conviction from the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On May 3, 2006, Brown was indicted on six counts of unlawful sexual conduct with a minor, one count of receiving stolen property, and one count of theft. The indictment alleged that between March 1, 2005 and July 31, 2005, Brown, who was over the age of 18 at the time, knowingly, or with reckless disregard to age, engaged in sexual conduct on several occasions with a minor 13 years of age or older, but under the age of 16. Brown pled not guilty to all charges.
 {¶ 3} On November 26, 2007, Brown withdrew his not guilty plea. He pled guilty to one count of receiving stolen property and one count of theft, maintaining his not guilty plea to the remaining six counts of unlawful sexual conduct with a minor. On December 4, 2007, the *Page 2 
indictment was amended to change the timeline of the alleged offenses to between February 23, 2005 and July 31, 2005. The parties stipulated to the date of birth of H.S., the victim, as February 22, 1991, as well as Brown's date of birth, May 12, 1986.
 {¶ 4} The case proceeded to a jury trial on December 3, 2007. On December 4, 2007, Brown was convicted on one count of unlawful sexual conduct with a minor, and found not guilty as to the remaining five counts in the indictment. On January 2, 2008, Brown was sentenced to 22 months of incarceration and classified as a Tier Two sexual offender.
 {¶ 5} Brown filed a notice of appeal to this Court on January 31, 2008. He raises one assignment of error for our review.
 II. ASSIGNMENT OF ERROR "THE VERDICT IN THIS CASE IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO."
 {¶ 6} In his sole assignment of error, Brown argues that his conviction was against the manifest weight of the evidence and based on insufficient evidence as a matter of law. We disagree.
 {¶ 7} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). We also note that
 "because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by *Page 3 
the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 8} Thus, we will first address Brown's claim that his conviction was against the manifest weight of the evidence, as it is dispositive of his claim of insufficiency.
 {¶ 9} In determining whether a conviction was against the manifest weight of the evidence, we do not view the evidence in the light most favorable to the State, in order to determine whether the prosecution satisfied its burden of persuasion. State v. Love, 9th Dist. No. 21654,2004-Ohio-1422, at ¶ 11. Instead,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
Our "`discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Castleberry, 9th Dist. No. 23644, 2007-Ohio-5803, at ¶ 15, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 10} Brown was convicted on one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), a fourth degree felony. The statute provides, in pertinent part:
 "(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."
 {¶ 11} The parties stipulated as to the ages of both the defendant and the victim prior to trial. During the timeline covered in the amended indictment, from February 23, 2005 to July 31, 2005, Brown was either 18 or 19 years old, and the victim was 14 years old. Venue and jurisdiction have also been satisfied inasmuch as the sexual conduct is alleged to have taken place at the victim's home in Wellington in Lorain County, Ohio. Thus, we must weigh the *Page 4 
evidence with respect to whether Brown engaged in sexual conduct with H.S., and whether he did so either knowing the victim was 13 years of age or older but under 16 years of age, or was reckless in this regard.
 {¶ 12} Testifying for the State, H.S. recalled that in late February 2005, she met Brown at Club 20, a dance club for teenagers. This meeting occurred shortly after her 14th birthday. She testified that the two exchanged phone numbers at this initial meeting, and that she told Brown she was 16 years old. However, she claimed that "before he had ever came around to my house he knew from talking on the phone with me that I was 14." H.S. claimed that she and Brown began having sexual intercourse approximately two weeks after their first meeting. H.S. testified that she and Brown engaged in sexual intercourse during "a majority" of the approximately 25 to 30 times Brown came to her house, over the course of a three-month time span, from early March 2005 through June 2005. H.S. also testified as to certain details of her sexual encounters with Brown. She identified the rooms in which they had sexual intercourse. She also identified distinguishing marks on Brown's body, such as his name tattooed on his arms. However, she did not identify the bruise on Brown's left thigh, noting that other than "a few * * * bumps on his chest that were like scars," there was "nothing dramatic."
 {¶ 13} H.S. testified that Brown would come to her house late at night, at approximately 12:00 to 1:00 a.m. H.S. claimed that Brown visited late at night because her mother worked the night shift at a local steel mill between 11 p.m. and 7 a.m, and because H.S. knew her mother would disapprove of her relationship with Brown. She also testified that after her mother found out about the relationship, Brown called the house and lied to her mother, identifying himself as Brandon, one of Brown's friends, so as not to arouse suspicion. H.S. testified that she "considered each other dating" and that she would refer to Brown as her "boyfriend." *Page 5 
 {¶ 14} M.B., also testifying for the State, recalled that H.S. and Brown met at Club 20 and exchanged phone numbers during their first meeting. She testified that before Brown's first visit to H.S.'s home, H.S. told Brown during a phone conversation that she was 15 years old, saying that "I thought she said she was 15." M.B. further stated that prior to the first time Brown came to H.S.'s house, he knew H.S.'s real age. M.B. testified that she was at H.S.'s house when H.S. told him she was 14 and that she later talked to Brown on the phone and told him that H.S. was really 14.
 {¶ 15} M.B. would often spend the night at H.S.'s house, along with Brown and a group of mutual friends, watching television, drinking alcohol, and smoking marijuana. M.B. testified that during these times, H.S. and Brown would "go off" or "go in different rooms" than the rest of the group. M.B. testified that on one of these occasions, March 9, 2005, when entering H.S.'s bedroom, she discovered that the lights were turned off. H.S. and Brown were undressed. She testified that upon M.B. entering the room, they quickly "jumped up," wrapped themselves in a blanket and let M.B. know they were in the room. M.B. claimed that "I thought they were having sex because they were both undressed, and they were both breathing really heavy."
 {¶ 16} The State's third witness, Detective Anthony Kovacs of the Lorain County Sheriff's Office, testified that he became involved in the case following a report that a number of items, including approximately 278 DVD's and a quantity of women's jewelry, were stolen from H.S.'s home. Kovacs testified that the alleged incidents of unlawful sexual conduct between H.S. and Brown took place "shortly after" the victim's 14th birthday, February 22, 2005, consistent with the time frame given by H.S. During the State's rebuttal, Kovacs testified that when booked at the Lorain County Jail on a related theft offense, no record was made of the *Page 6 
bruise on Brown's left thigh, despite the jail's standard booking practice of asking inmates to verify any "scars, marks, and tattoos."
 {¶ 17} J.S., the victim's sister, testified on rebuttal that she saw H.S. with Brown early one morning, at approximately 5:00 a.m. J.S. also testified that she later talked to Brown on the phone, identifying his voice from their first meeting. J.S. testified that she told Brown that she knew about his sexual relationship with her sister. She claimed that rather than denying it, he admitted to it, and "kind of just chuckled."
 {¶ 18} April Brown, the defendant's mother, testified for the defense that "I don't know if he [(Brown)] was dating her [(H.S.)] or not." She identified a bruise on Brown's left thigh, which, according to her testimony, resulted from a 1999 accident in which Brown was hit by a car while riding his bicycle. Ms. Brown said that as far as she knew, Brown and H.S. were "just friends," although she also testified that "some of [Brown's] friends would tell me that he goes over there and see [sic] her sometime."
 {¶ 19} Brown denied having had sexual intercourse or having been in a dating relationship with H.S. He testified that H.S. told him she was 18 when they first met. During his testimony, he referred to her as a friend, and testified that their relationship consisted of text messages and a few times where she wanted to "hang out." Brown testified that he only went to her house on one occasion, which he described as a party attended by approximately 50 people. He also denied having called H.S. from jail, having called H.S. identifying himself as "Brandon" to try and deceive H.S.'s mother, and having talked to J.S. on the phone. Brown also identified the bruise on his thigh and showed it to the jury.
 {¶ 20} There is a substantial conflict between Brown's testimony and the testimony of the State's witnesses, H.S., M.B., and J.S. H.S. and M.B. claimed that Brown was a frequent *Page 7 
visitor at H.S.'s home, along with a number of their mutual friends, in contrast to Brown's testimony that he only visited H.S.'s house one time. H.S. testified directly as to her sexual relationship with Brown, while M.B. provided strong circumstantial evidence that H.S. and Brown were engaging in sexual intercourse on the night of March 9, 2005, when she walked in the room in which they were in bed. Brown adamantly denied ever having had sexual intercourse with H.S., referring to her as his friend. Meanwhile, J.S. testified that she saw Brown in her home on at least one occasion. The time in which this encounter took place, at approximately 5:00 a.m., as well as the fact that Brown left shortly afterward, corroborates both H.S.'s and M.B.'s testimony about the time Brown's visits to the home took place.
 {¶ 21} Consistent with our duty to weigh the evidence and all reasonable inferences and consider the credibility of witnesses, we conclude that Brown's testimony is inconsistent and lacks credibility.Otten, 33 Ohio App.3d at 340. Brown's admitted use of marijuana and its related memory loss undermine his various denials. For example, he adamantly denied ever having spoken on the phone with J.S., in contrast to her testimony that she had had a phone conversation with him during which he admitted to sleeping with H.S. Brown also denied having told H.S. that he loved her. Yet, Brown's phone calls to H.S. while in jail on unrelated charges demonstrate unequivocally that Brown told H.S., "I love you" when asking for her help in posting bond. Moreover, Brown's admission that he stole H.S.'s mother's checking account number and used it to pay his own bills demonstrates his character for untruthfulness. See Evid. R. 608(B); Nawal v. Nawal (July 19, 1995), 9th Dist. No. 2368-M, *6 (finding that forgery, theft, and long distance telephone calls made to the accounts of others were clearly probative of the appellant's character for truthfulness.) See, also, State v. Ingram
(July 9, 1992), 8th Dist. No. 60072 (finding cross-examination regarding alleged theft was allowable under Evid. R. 608(B) as *Page 8 
probative of witness's character trait for truthfulness.) Accordingly, the jury could reasonably have discredited Brown's testimony and based its decision upon the testimony of H.S., M.B., and J.S.
 {¶ 22} There is also strong evidence that even if Brown did not know that H.S. was 14 when they engaged in sexual intercourse, that he was at least reckless with regard to her age. Brown testified that during the time he met H.S., he was working at Club 20 as a doorman, collecting money. He testified that although the club was only open to those 16 and older, the club did not regularly check ID's at the door, and that he was aware that children under 16 would be at the club. This testimony was corroborated by H.S., who testified that she was "pretty sure" that children at least 13 were allowed into the club, but that "they never checked." This suggests that Brown knew that those under 16 who came to the club would lie about their ages.
 {¶ 23} Although Brown testified that H.S. told him when they first met that she was 18, according to H.S., M.B., and J.S., he knew her true age before his first visit to H.S.'s home. Even if he had not been informed of her true age, Brown made no effort to verify her age or to confirm that she was of the age of consent before beginning a sexual relationship. Indeed, he admitted that he never saw an ID from her at all. Given his familiarity with Club 20 and the age range of the teenagers that would be present there, as well as his admission that "a lot of them do lie about their age[,]" this provides strong evidence that Brown was at least reckless with regard to H.S.'s age, even if he did not know she was 14 prior to their sexual relationship.
 {¶ 24} Taking the evidence and the credibility of each witness into account, there exists ample evidence that Brown had sexual intercourse with H.S. on at least one occasion, while either knowing she was under the age of consent, or with reckless disregard as to her age. Brown's conviction for unlawful sexual conduct with a minor was therefore not against the *Page 9 
manifest weight of the evidence. Thus, the conviction was also not based on insufficient evidence as a matter of law. Accordingly, Brown's sole assignment of error is overruled.
 III. {¶ 25} Brown's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 CARR, P. J. WHITMORE, J. CONCUR *Page 1